# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 2000 Session

## JERRY WAYNE TERRY v. DONNA BRAZIER TERRY

**Direct Appeal from the Probate and Family Court for Cumberland County**
**No. 12154   Steven C. Douglas,  Judge**

## FILED SEPTEMBER 20, 2000

### No.  E2000-00825-COA-R3-CV

---

This appeal from the Cumberland County Probate and Family Court concerns whether the Trial Court erred in making an equitable division of the marital estate of Jerry Wayne Terry, the Appellant, and Donna Brazier Terry, the Appellee.  We affirm the judgment of the Trial Court and remand for such further proceedings as may be necessary.  We adjudge costs of appeal against Mr. Terry and his surety.

**Tenn. R. App. P. 3; Judgment of the Probate and Family Court Affirmed and Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

S. Roger York,  Crossville, Tennessee, for the appellant, Jerry Wayne Terry.

Vivian E. Warner and Allison M. Barker, Crossville, Tennessee, for the appellee, Donna Brazier Terry.

### OPINION

This appeal arises from a divorce action between Jerry Wayne Terry, the Appellant, and Donna Brazier Terry, the Appellee.  Mr. Terry appeals the judgment of the Cumberland County Probate and Family Court and presents for our review the sole issue of whether the Trial Court erred in its division of the marital estate.

We affirm the judgment of the Trial Court and remand for such further proceedings as may be necessary consistent with this opinion.

The parties were married in May 1994. It was the second marriage for Ms. Terry, whose husband had died, and it was the fourth marriage for Mr. Terry.[1] Both parties were employed at Liberty Life Insurance Company in Tullahoma.

In January 24, 1994 Mr. Terry purchased a home valued at approximately $59,000 from his mother in Crossville. Mrs. Terry had inherited a large farm from her parents and had inherited the marital home and property from her late husband. Thus, at the time of the Terrys' marriage, Ms. Terry's net worth was approximately $589,170[2], and Mr. Terry's net worth was approximately $15,330.[3]

Approximately three months after their marriage, Ms. Terry paid the remaining amount owed on Mr. Terry's vehicle. During 1995 Mr. Terry added Ms. Terry's name to the deed of the Crossville property. Likewise, Ms. Terry added Mr. Terry's name to the certificates of deposit and bank accounts, except the retirement accounts, that she had before their marriage.

During 1995, Mr. Terry left his employment at Liberty Life Insurance Company in Tullahoma for a position as a sales manager for Fairfield Glade Communities in Crossville. In January 1996 Ms. Terry retired after 40 years of employment at Liberty Life Insurance Company as a cashier's secretary because the company was relocating to Nashville. Ms. Terry received a year's salary for 1996 as severance. Ms. Terry moved into the parties' home in Crossville, and during that year she sold the real property she had inherited from her parents and late husband for $214,000. In September that same year, Ms. Terry's son died unexpectedly, and she received approximately $32,000 in retirement and life insurance proceeds.

After selling Ms. Terry's property, the parties purchased a home in Cumberland County, for the cash price of approximately $216,000 on November 25, 1996. They moved into

---

[1]No children were born of the marriage. Mrs. Terry had two children from her first marriage, and they were adults at the time of her marriage to Mr. Terry. Mr. Terry's three previous marriages ended in divorce. Ms. Terry stated in her answer that she was unaware that Mr. Terry had been married several times.

[2]Ms. Terry's assets consisted of $201,565 in bank accounts and certificates of deposit, $214,000 in real estate, $173,605 in retirement accounts, and a 1992 Chevrolet Lumina. She had no debts.

[3]Mr. Terry's assets consisted of $7,385 in bank accounts, $59,500 in real estate, and a 1991 GMC Jimmy of unknown value. His debts for real estate and an automobile amounted to $51,555.

the new house and began renting the house in which they had been living. They purchased furnishings totaling $38,772.72 for the new home.[4]

The parties created joint bank accounts during their marriage from their separate bank accounts, income, and Ms. Terry's certificates of deposit. Mr. Terry testified that he would give his paycheck to Ms. Terry, and she would deposit the money into their joint accounts. Ms. Terry's retirement accounts remained her separate property throughout the marriage and were never commingled. During the marriage Ms. Terry made $6,000 in contributions to her individual retirement account, and Mr. Terry made $8,000 in contributions to his individual retirement account. He testified that he believed Ms. Terry was honest about the couple's finances and did a good job of managing them during the marriage. According to both parties, Ms. Terry managed the parties' finances from the outset of the marriage.

Around April 1999 Mr. Terry stopped giving Ms. Terry his paychecks or any other money, except for $1,720. Mr. Terry testified that his net earnings through October 31, 1999 were $52,889. He further stated that he had opened a bank account the week before trial and had deposited $16,411 in the account. He also stated that he had $10,000 in cash at the marital residence. However, Mr. Terry also noted that he had between $6,000 and $10,000 in gambling losses in 1999, and the parties agreed that Mr. Terry had paid $2,870 in improvements to the rental house in 1999.

Although Mr. Terry filed for divorce on July 22, 1999, both parties remained in the marital home until the divorce hearing on November 29, 1999, and Ms. Terry paid all the household expenses from the parties' joint accounts. In addition to being the financial manager of the family, Ms. Terry was also the homemaker for the parties, which included lawn work.

At the time of the divorce, Ms. Terry was 61 years old, and Mr. Terry was 51 years old. Although Ms. Terry is not eligible to receive Social Security benefits, she does receive a monthly pension of $233 from Liberty Life Insurance Company. However, she testified that her monthly living expenses total $1,620. Ms. Terry believes that her prospects for employment are doubtful, and thus, she has little hope of acquiring additional capital assets. She has a high school education, and her employment experience consists of secretarial work. She suffers from stress, high blood pressure, and an eye problem.

---

[4]The Trial Court assessed the furnishings at a current market value of 60% of the original cost for a value of $23,263.63.

The Trial Court found that the marriage was of short duration and that Mr. Terry had a greater ability to acquire future capital assets. The Court found that at age 51, Mr. Terry was in his peak earning years, whereas Ms. Terry at age 61 had retired after 40 years of service as a secretary and her prospects for future employment were doubtful. The Court also found that Ms. Terry's separate property at the time of the marriage was significantly greater than Mr. Terry's. Thus, after the division of the marital estate of this marriage of short duration, Ms. Terry received significantly more of the assets. Therefore, the Trial Court denied Ms. Terry's request for alimony.

Mr. Terry's sole issue on appeal is that the Trial Court erred in its division of the marital estate. First, Mr. Terry contends that the Trial Court erred in attributing income from various sources such as interest income and farm rent to Ms. Terry. Next, He argues that he is entitled to an equitable division of the $65,755 increase to Ms. Terry's retirement accounts. Mr. Terry does not argue with the Trial Court's finding that Ms. Terry's retirement accounts, excluding the earned interest, is Ms. Terry's separate property. However, he does argue that it was his contribution as a significant wage earner that allowed Ms. Terry's assets to increase. He maintains that during the parties' marriage, "the largest and primary contribution to the accumulation of assets came from [his] income." He further contends that "for four of [the] years of marriage, Donna Terry did not work although for one of these years she did get severance pay and unemployment compensation."

Ms. Terry argues that the Trial Court did not err in its division of the marital estate. First, she contends that the annual income figures were not a key factor in determining the equitable division of the marital estate. She maintains that the Trial Court found that the major factor in the acquisition of the marital assets was the significant assets she brought into the marriage. Also, the Court found that Ms. Terry earned income through 1996 and contributed to the marital estate as the parties' financial manager and homemaker in the years after 1996. Therefore, she contends that "exact mathematical figures are not required for the Court to make its decision."

With respect to her retirement accounts, Ms. Terry contends that Mr. Terry made no significant contribution to the increase in value, other than the $6,000 individual retirement account contribution. She maintains that the "fact that Mr. Terry earned wages during the marriage does not automatically mean that he made real and significant contributions to the increase in value of Ms. Terry's retirement accounts, especially in light of the fact that he brought debt and very little assets into the marriage." She asserts that she managed the accounts herself and that Mr. Terry made no contribution toward the increase in value of the accounts.

Lastly, although Mr. Terry argues that the largest and primary contribution to the accumulation of assets during the marriage came from his income, Ms. Terry notes that the Trial

Court found that the major factor in the acquisition of assets was the assets she brought into the marriage.

Our scope of review pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure "shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."

"In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) (citation omitted).

It is well established that the division of a marital estate need not be equal to be equitable. Batson, 769 S.W.2d at 856. Before a Court can divide a marital estate, it must determine what is separate property and what is marital property. Batson, 769 S.W.2d at 856.

Tennessee Code Annotated § 36-4-121(b)(2) defines "separate property":

(A) All real and personal property owned by a spouse before marriage;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

Tennessee Code Annotated § 36-4-121(b)(1) defines marital property:

(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance

in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

(c) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

The Court considers all of the following when making an equitable division of marital property:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

-6-

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

We are of the opinion that the evidence does not preponderate against the judgment of the Trial Court in its division of the marital estate. The Trial Court followed the enumerated factors of Tennessee Code Annotated § 36-4-121(c) in making its decision. As the Trial Court noted in its judgment, Ms. Terry entered the marriage with a large number of assets, whereas Mr. Terry had more debt than assets. At the end of the marriage Mr. Terry's assets were substantially greater than they were before the marriage. We must disagree with Mr. Terry's argument that he is entitled to part of the interest that has accrued in Ms. Terry's separate retirement accounts. He admitted that Ms. Terry had always managed the accounts herself, and during his testimony he could not state anything he had done to contribute to the appreciation of Ms. Terry's retirement accounts. The only explanation that he offered was that he had contributed his paycheck, and thus, Ms. Terry had not had to draw funds from the retirement accounts.

With respect to Mr. Terry's argument that the Trial Court erred in attributing certain sources of income to Ms. Terry, we agree with Ms. Terry that the annual income figures of each party were not a key factor in the equitable division of the marital estate in this case. As the Trial Court found, the major factor in the acquisition of marital assets was Ms. Terry's inherited property, life insurance benefits, and retirement benefits from the death of her first husband and her son. Moreover, Ms. Terry earned income through 1996 and after that year continued to make contributions to the marital estate as a homemaker and a financial manager of the couple's investments.

In light of the foregoing, we affirm the judgment of the Trial Court and remand for further proceedings as may be necessary consistent with this opinion. We adjudge costs of appeal against Mr. Terry and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE